1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CAREY JAY CRAVEN,                        No. 2:14-cv-0348-GEB-KJN

12                 Plaintiff,

13         v.                                 FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                   Defendant.
16

17         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment,

20   plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

21   disabled from February 28, 2011, the date plaintiff's application was filed, through the date of the

22   final administrative decision.  (ECF No. 19.)  The Commissioner filed an opposition to plaintiff's

23   motion and a cross-motion for summary judgment.  (ECF No. 20.)  Plaintiff filed a reply.  (ECF

24   No. 21.)

25   ////

26   ////

27

28   ─────────────────────
     [1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15).

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

## I.   BACKGROUND

Plaintiff was born on December 12, 1964, obtained his GED, but admits that someone else took the test to obtain the credential for him, and previously worked as a security guard.[2] (Administrative Transcript ("AT") 39, 42, 80.)  On March 14, 2011, plaintiff applied for SSI, alleging that he was unable to work as of January 1, 2005.  (AT 13, 177-187.)  On July 18, 2011, the Commissioner determined that plaintiff was not disabled.  (AT 13, 123-28.)  Upon plaintiff's request for reconsideration, the determination was affirmed on October 25, 2011.  (AT 13, 133-38.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on August 2, 2012, and at which plaintiff (represented by counsel) and a vocational expert testified.  (AT 13, 32-90.)

In a decision dated October 26, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from February 28, 2011, the date plaintiff filed his application, through the date of the ALJ's decision.  (AT 13-24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 14, 2014.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on February 4, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

## II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) failed to fully and fairly develop the record by not requesting further opinion evidence; (2) improperly assessed the credibility of plaintiff's testimony; and (3) improperly relied on the erroneous testimony of a Vocational Expert ("VE").

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  At Step One, the ALJ concluded that plaintiff had not engaged

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past relevant work?  If so, the

3

1   in substantial gainful activity since February 28, 2011, the date plaintiff filed his application.  (AT

2   15.)  At Step Two, the ALJ determined that plaintiff had the following severe impairments:

3   "diabetes with diabetic peripheral neuropathy, hepatitis C viral infection, gastroesophageal reflux

4   disease, chronic obstructive pulmonary disease, adjustment disorder with depressed mood,

5   antisocial personality disorder, and substance abuse."  (Id. (citations omitted).)  However, at Step

6   Three, the ALJ determined that plaintiff did not have an impairment or combination of

7   impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

8   Appendix 1.  (Id.)  In particular, the ALJ considered plaintiff's impairments under the criteria of

9   listings 3.02, 3.03, 6.02, and 11.14 and determined that he did not meet any of these listings.  (AT

10   15-17.)

11          Before proceeding to Step Four, the ALJ assessed plaintiff's residual functional capacity

12   ("RFC") for the relevant time period as follows:

13          After careful consideration of the entire record, I find that the claimant has the
14          residual functional capacity to perform light work as defined in 20 CFR
             416.967(b) except he is limited to simple repetitive tasks in a nonpublic setting; he
15          is restricted to occasional interaction with coworkers and supervisors; and he must
             avoid concentrated exposure to workplace hazards, such as work at heights.
16

17   (AT 17.)

18          At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work.

19   (AT 22.)  Finally, at Step Five, the ALJ, based on the VE's testimony, determined that

20   considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in

21   significant numbers in the national economy that plaintiff could have performed, specifically,

22

23          claimant is not disabled.  If not, proceed to step five.

24          Step five:  Does the claimant have the residual functional capacity to perform any
             other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
25

26   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27          The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
28   evaluation process proceeds to step five.  Id.

4

mail clerk, hand packager, and janitor.  (AT 24, 84-86.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from February 28, 2011, through the date of the ALJ's decision.  (AT 24.)

B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.    *Whether the ALJ Failed to Fully and Fairly Develop the Record*

First, plaintiff argues that the ALJ committed reversible error by violating her duty to fully and fairly develop the record.  Specifically, plaintiff contends that the ALJ breached this duty because she did not order that plaintiff undergo a consultative examination, try to obtain opinion evidence from plaintiff's treating physicians, or seek additional evidence beyond that already contained in the record.

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  "When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

It is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits.").  Indeed, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."  Yuckert, 482 U.S. at 146 n.5.

Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.  This duty extends to the represented as well as to the unrepresented claimant.  When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to

1    allow for proper evaluation of the evidence, triggers the ALJ's duty
2    to conduct an appropriate inquiry.

3    Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks

4    omitted).  In short, "[a]n ALJ's duty to develop the record further is triggered only when there is

5    ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

6    evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242

7    F.3d at 1150).

8            "The ALJ may discharge this duty in several ways, including:  subpoenaing the claimant's

9    physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

10   the record open after the hearing to allow supplementation of the record." Id.  However, as some

11   courts have persuasively observed, the ALJ "does not have to exhaust every possible line of

12   inquiry in an attempt to pursue every potential line of questioning.  The standard is one of

13   reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation

14   omitted)

15           In support of his argument, plaintiff cites to 20 C.F.R. § 416.912(e), which provides that

16   an ALJ may arrange for an additional examination of a claimant at the expense of the Social

17   Security Administration when "the information [the ALJ] need[s] is not readily available from the

18   record of [the claimant's] medical treatment source" or the ALJ is "unable to seek clarification

19   from [the claimant's] medical source." Plaintiff asserts that this regulation mandated the ALJ to

20   obtain a state agency consultative examination of plaintiff's physical impairments because

21   plaintiff was unable to obtain an RFC opinion from his treating physicians.  However, contrary to

22   plaintiff's interpretation, this regulation states that under such circumstances an ALJ "*may* order a

23   consultative examination while awaiting receipt of medical source evidence." 20 C.F.R. §

24   416.912(e) (emphasis added).  Given the permissive language of this regulation, it is clear that it

25   allowed the ALJ to obtain a consultative examination for plaintiff, but it did not create a duty to

26   do so as plaintiff appears to suggest.  Accordingly, plaintiff's argument that the regulations

27   required the ALJ to obtain a physical consultative examination of plaintiff lacks merit.

28   ////

1    Plaintiff next argues that he "was unable to obtain a physical RFC questionnaire or

2   medical source statement from any of his Kaiser treating physicians concerning the physical

3   impairments caused by his diabetic peripheral neuropathy," therefore leaving the record

4   insufficient for the ALJ to determine plaintiff's physical RFC.  (ECF No. 19 at 24.)  However, it

5   was plaintiff who carried the burden of providing medical and other evidence that supported the

6   existence of his claimed impairments and the impact that they had on his ability to work.

7   Yuckert, 482 U.S. at 146 (1987); Tidwell, 161 F.3d at 601.  In this instance, the ALJ's duty to

8   develop the record would have been triggered only had the ALJ determined that the record was

9   inadequate to allow for proper evaluation of the evidence.  Tonapetyan, 242 F.3d at 1150.  Here,

10   there was no reasonable indication that the medical record was insufficient so as to prevent the

11   ALJ from making her determination based on substantial evidence.  Indeed, plaintiff's counsel

12   himself told the ALJ at the administrative hearing that the record before the ALJ was complete.

13   (AT 35.)

14    The record contained sufficient medical evidence and treatment notes upon which the ALJ

15   based her well-reasoned RFC determination.  While the record does not contain opinion evidence

16   from plaintiff's treating physicians, and does not contain any examining physician opinions with

17   respect to plaintiff's physical limitations, it is replete with objective medical evidence from which

18   the ALJ reasonably made an RFC determination based on substantial evidence.  The record

19   contains numerous medical reports related to plaintiff's diabetic neuropathy, chronic obstructive

20   pulmonary disease ("COPD"), gastroesophageal disease, and other physical impairments.  (See,

21   e.g., AT 478, 938, 940-41, 1384, 1389-90, 1557, 1559, 1562-63.)  The ALJ clearly considered

22   this evidence when determining plaintiff's RFC.  (AT 20-21.)

23    Furthermore, the record before the ALJ contained just more than raw medical data

24   regarding plaintiff's physical impairments, it also contained medical opinions issued by Dr.

25   Amon and Dr. Williams, two state agency non-examining physicians who reviewed plaintiff's

26   medical records and opined about plaintiff's physical functional limitations on a function-by-

27   function basis.  (AT 91-104, 106-121.)  The ALJ stated in her decision that she gave these

28   opinions "significant weight" in determining plaintiff's physical RFC.  (AT 21.)  Plaintiff appears

7

to argue that the ALJ improperly relied solely on the opinions of the state agency non-examining physicians to determine plaintiff's physical RFC because the ALJ was not at liberty to rely solely on this evidence to support her determination.  While plaintiff is correct that the opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional, Lester, 81 F.3d at 831, the ALJ in this case did not rely on the non-examining opinions for this purpose because there were no treating or examining opinions to reject.  The ALJ's RFC determination merely had to be supported by substantial evidence from the record; nothing restrained her from relying on the opinions of plaintiff's non-examining physicians as evidence in support of this determination.  See Tackett, 180 F.3d at 1097. Furthermore, the ALJ noted that "[n]o single assessment ha[d] been completely adopted as the [RFC] determined [in her decision]."  (AT 21.)  The ALJ also stated that she had "adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole."  (Id.)  Indeed, while the ALJ gave "significant weight" to these opinions, she also relied upon plaintiff's numerous treatment records, which substantially supported the ALJ's RFC determination that plaintiff's physical impairments were not so severe as to preclude him from completing light work with some additional restrictions.

In short, plaintiff fails to show that the evidence in the record was ambiguous or was inadequate to allow for proper evaluation of plaintiff's impairments.  Therefore, the ALJ was not obligated to further develop the record by seeking the opinions of plaintiff's treating physicians and having plaintiff examined by state agency physicians.

2.   *Whether the ALJ Erred in Assessing the Credibility of Plaintiff's Testimony*

Second, plaintiff argues that the ALJ erred in determining that plaintiff's testimony regarding the degree of his pain and limitations was not credible to the extent that it was inconsistent with the ALJ's RFC determination.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has

> presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id. at 959.

Here, in determining that plaintiff's testimony was not credible to the extent it was inconsistent with the RFC assessment, the ALJ reasoned as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent those statements are inconsistent with the residual functional

9

1    capacity assessment herein.

2    Additionally, I find the claimant's testimony is inconsistent with the
     objective medical evidence and further undermines the claimant's
3    credibility.   The claimant alleged he was disabled because of
     COPD.   Substantial evidence, however, does not support the
4    claimant's allegation that the severity of this impairment caused the
     claimant to be disabled.  Indeed, a chest x-ray performed on April
5    23, 2010, showed no acute cardiopulmonary abnormalities.   In
     addition, on December 7, 2012, the claimant had normal breathing
6    sounds and chest expansion, and had no shortness of breath.
     Moreover, on January 26, 2011, the claimant had a normal chest
7    examination that showed no evidence of acute cardiopulmonary
     disease.   While not the sole basis for discounting the claimant's
8    subjective testimony, the inconsistency of the claimant's testimony
     and the objective medical evidence is a legitimate factor in
9    assessing an adverse credibility finding.

10   The claimant's testimony that he has not worked since 2007 is
     inconsistent with the evidence of record.  The medical records from
11   Kaiser Permanente indicate that he helped his aunt build a floor and
     worked in a scrap metal industry.  This discrepancy diminishes the
12   persuasiveness of the claimant's subjective complaints and alleged
     functional limitations.

13

14   Additionally, I discredit the claimant's subjective complaints
     because there is substantial evidence that the claimant attempted to
15   exaggerate the severity of his symptoms.   The psychological
     consultative examiner suggested that the claimant did not give his
16   best effort and may have "deliberately performed poorly."   This
     evidence suggests the claimant exaggerated the severity of his
17   symptoms for secondary gain.   Accordingly, I diminish the
     claimant's overall credibility.

18   Moreover, I diminish the claimant's credibility because substantial
     evidence in the record shows that the claimant failed to comply
19   with prescribed treatment.  Indeed, the claimant never attended
     hepatitis C classes and did not show up for an ultrasound.  Further,
20   the records indicate that the claimant's diabetes symptoms arose
     from noncompliance with insulin.  This demonstrates a possible
21   unwillingness to do what is necessary to improve his condition.  It
     may also be an indication that his symptoms were not as severe as
22   he purported.  Although it is not the primary basis for the decision
     in this case, the claimant's failure to follow prescribed treatment
23   without a good reason is a basis for finding the claimant is not
     disabled.

24

25   I find that the claimant's inconsistent statements relating to his
     history of drug and [alcohol] abuse adversely affect his credibility.
26   Specifically, the claimant testified that he did not use alcohol.  Yet,
     medical records indicate that on May 16, 2012, the claimant used
27   alcohol.  Further, the claimant reported that he was not using drugs,
     yet urine toxicology screens were positive for barbiturates and
28   "benzos."  These multiple inconsistencies and lack of candor about
     alcohol and substance abuse diminish the claimant's credibility.

1
2
3
4
5

Considering all of these individual credibility factors together and in view of the meager objective evidence during the relevant period, the claimant's credibility and allegations of inability to perform any substantial gainful activity during the relevant period are considerably inconsistent.   The credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record.

6  (AT 18-19 (citations to the record omitted).)  As discussed below, this assessment provided

7  multiple specific, clear and convincing reasons for discounting plaintiff's testimony.

8  First, the ALJ determined that plaintiff's testimony regarding the extent of his

9  impairments, particularly the impact of his COPD, was not consistent with the objective medical

10  evidence in the record.  In support of this determination, the ALJ cited to several of plaintiff's

11  treating records spanning from April of 2010 to February of 2012[4] that suggest that plaintiff did

12  not suffer from symptoms associated with COPD or from acute cardiopulmonary disease.  (See

13  AT 19, 938, 1518, 1559.)  While plaintiff is correct in noting that an ALJ may not rely solely on

14  the lack of objective medical findings concerning a claimed impairment to discredit the claimant,

15  see Thomas, 278 F.3d at 960, the ALJ in this case used the medical evidence in the record that

16  conflicted with plaintiff's allegations concerning the severity of her symptoms to corroborate his

17  determination that plaintiff's testimony was exaggerated, rather than relying on it as the sole basis

18  for his credibility finding.  Indeed, the ALJ expressly stated in her decision that this conflict was

19  "not the sole basis for discounting [plaintiff's] subjective testimony."  (AT 19.)  As discussed

20  below, the ALJ provided other clear and convincing reasons for finding plaintiff not credible.

21  Therefore, the ALJ's discussion of inconsistencies between plaintiff's testimony and the findings

22  expressed in his treating records was not in error.  Burch, 400 F.3d at 681 ("Although lack of

23  medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the

24  ALJ can consider in his credibility analysis.").

25  Second, the ALJ determined that the conflict between plaintiff's testimony that the last

26  time he worked was in 2007 and evidence in the record indicating that plaintiff had engaged in

27

28

[4] The ALJ erroneously states in her decision that the February 7, 2012 medical record she cited to in support of this determination was issued on December 7, 2012.  (AT 19, 1518.)

1    work after his alleged onset date further undermined his testimony.  Indeed, while plaintiff

2    testified at the administrative hearing that he had not worked anywhere since 2007 (AT 43),

3    Kaiser Permanente treating records from February of 2012 state that plaintiff had been working as

4    recently as early 2012 (AT 1557 ("[Plaintiff] supposedly went to Oregon 2 weeks after [a January

5    18, 2012 colonoscopy] and helped his aunt with building a floor but then came back to be with his

6    wife.  He even has a job now working in scrap metal.")).  The ALJ may consider such

7    inconsistencies between the claimant's testimony and his conduct and work record when

8    weighing the claimant's credibility.  Thomas, 278 F.3d at 958.  Here, there existed substantial

9    evidence in the record indicating that plaintiff was less than truthful about his work history.  (See

10   AT 1557.)  The ALJ properly relied on this evidence to determine that plaintiff's testimony was

11   less than credible.

12          Third, the ALJ determined that plaintiff was less than credible based on evidence in the

13   record that plaintiff exhibited behaviors suggestive of decreased motivation and effort.  This

14   constituted another proper reason for discounting plaintiff's testimony.  See Mohammad v.

15   Colvin, 595 F. App'x 696, 697 (9th Cir. 2014) ("Evidence of malingering is also sufficient to

16   support a negative credibility finding.").  As highlighted by the ALJ, Dr. Eargle, a consulting

17   psychologist, noted that "there are concerns that [plaintiff] did not give his best effort and might

18   have deliberately performed poorly" on psychological tests she administered.  (AT 845.)  The

19   ALJ reasonably drew from this evidence of decreased effort to support her determination that

20   plaintiff's testimony regarding the extent of his limitations and pain was less than credible.

21          Fourth, the ALJ determined that plaintiff's credibility was diminished by the fact that he

22   failed to fully comply with the treatments his treating physicians prescribed.  Specifically, the

23   ALJ cited to plaintiff's treating records that demonstrated that plaintiff failed to attend hepatitis C

24   classes, a scheduled ultrasound, and did not use insulin with the frequency his treating physicians

25   prescribed.  (AT 19, 942, 1605.)  To be sure, the record contains a number of other treating

26   records indicating plaintiff's non-compliance with his prescribed treatments beyond those the

27   ALJ cited to in support of this reasoning.  (See, e.g., AT 935, 1140, 1465, 1604, 1624.)  The ALJ

28   was permitted to consider any "unexplained or inadequately explained failure to seek treatment or

12

to follow a prescribed course of treatment" on plaintiff's part when weighing his credibility.

Tommasetti, 533 F.3d at 1039.  Plaintiff admits that he did not always use his insulin medication

as prescribed because he "forgets to take [h]is afternoon dose of insulin 99 percent of the time,"

but argues that he also did not take the medication because his "shame and self-loathing cause

him to, in effect, have a death wish."  (ECF No. 19 at 41-42.)  Such an explanation, however, is

insufficient to invalidate the ALJ's reasoning.  Furthermore, the ALJ noted in her decision that

this reason was "not the primary basis for" her adverse credibility determination.  (AT 19.)  Given

the number of other valid and well-supported reasons the ALJ gave in support of her adverse

credibility determination, it cannot be said that she erred by considering plaintiff's failure to

follow his prescribed treatment in arriving at her well-reasoned credibility conclusion.

Finally, the ALJ determined that plaintiff's testimony was not entirely credible because he

made inconsistent statements relating to his history of drug and alcohol use.  In particular, the

ALJ cited a conflict between plaintiff's testimony during the administrative hearing that he had

not used alcohol and drugs recently and his treating records indicating that he had used such

substances more recently.  Specifically, plaintiff testified at the administrative hearing that he

stopped using alcohol about 7 to 8 months prior to the August 2, 2012 hearing date, and had used

methamphetamine about 3 months prior to that date, but had not used other illicit drugs for at

least a couple of years.  (AT 60-61.)  The ALJ determined that this contradicted treating notes

from May 16, 2012, indicating that plaintiff was using alcohol "occasionally" and a urine test

taken on February 21, 2012, showing that plaintiff was "positive for . . . barbituates, benzos, and

all kinds of benzos this time, although he had only gotten Norcos" from his treating physician.

(AT 1557, 1598.)  This constituted substantial evidence to support the ALJ's negative credibility

determination because it permitted the ALJ to infer that plaintiff's "lack of candor [regarding his

drug and alcohol use] carrie[d] over to h[is] description of physical pain."  Thomas, 278 F.3d at

959.  Accordingly, this constituted yet another valid reason in support of the ALJ's decision to

find plaintiff not credible.

In sum, the ALJ gave multiple specific, clear and convincing reasons for why she found

plaintiff's testimony not credible that were supported by substantial evidence in the record.

1    Therefore, plaintiff's contention that the ALJ erred in making this determination is without merit.

2                   3.      *Whether the ALJ Properly Relied on the VE's Testimony at Step Five*

3                   Finally, plaintiff argues that the ALJ erred at step five by relying on VE testimony that

4    lacked evidentiary value because it was based on improper hypotheticals and information.

5                   An ALJ may pose a range of hypothetical questions to a vocational expert, based on

6    alternate interpretations of the evidence.  However, the hypothetical that ultimately serves as the

7    basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

8    determination, must account for all of the limitations and restrictions of the particular claimant

9    that are supported by substantial evidence in the record as a whole.  Bray v. Comm'r of Soc. Sec.

10   Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the

11   claimant's limitations, then the expert's testimony has no evidentiary value to support a finding

12   that the claimant can perform jobs in the national economy."  Id. (citation and quotation marks

13   omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that

14   are not supported by substantial evidence."  Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir.

15   2006).  Furthermore, as the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize

16   and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to

17   the vocational expert) without repeating each functional limitation verbatim in the RFC

18   assessment or hypothetical.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)

19   (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately

20   captured restrictions related to concentration, persistence, or pace, because the assessment was

21   consistent with the medical evidence).

22                  Plaintiff asserts that because the ALJ failed to properly develop the record and find

23   plaintiff's testimony credible, the hypotheticals she posed to the VE based on her RFC

24   determination were improper because the RFC failed to reflect all of plaintiff's limitations.  This

25   argument, however, lacks merit because, for the reasons stated above, the ALJ fulfilled her duty

26   to develop the record and gave proper reasons for finding plaintiff's testimony regarding the

27   impact of his impairments not credible.  Because the ALJ found plaintiff not credible, she was not

28   required to include any of plaintiff's alleged limitations beyond those already included in the RFC

                                                      14

1    determination.  The ALJ posed hypotheticals to the VE that were based on the limitations

2    outlined in the ALJ's RFC determination, which was supported by substantial evidence from the

3    record.  Therefore, plaintiff's argument is not well taken.

4           Second, plaintiff argues that the hypotheticals posed to the VE were ambiguous because

5    the ALJ told the VE to assume that the hypothetical person had the same educational history as

6    plaintiff instead of telling the VE that the hypothetical individual "did not finish high school."

7    (ECF No. 19 at 46.)  Plaintiff claims this distinction was necessary because it was revealed

8    through plaintiff's testimony during the administrative hearing that plaintiff did not actually attain

9    an education commensurate with receiving his GED because he had someone else take the test to

10   obtain that credential for him.  Plaintiff argues that the case should be remanded to obtain further

11   VE testimony because it is not certain that the jobs the VE testified plaintiff could perform were

12   jobs that required a high school education or GED.  This argument is frivolous.  The transcript of

13   the administrative hearing demonstrates that the VE was present during the entirety of the

14   proceedings, including when plaintiff testified that he had not legitimately obtained his GED.

15   (See AT 34.)  Therefore, the VE was almost certainly aware of this admission when the ALJ

16   posed the hypotheticals and directed the VE to take plaintiff's education level into account when

17   responding to those hypotheticals.

18          Finally, plaintiff argues that the ALJ erred in relying on the VE's testimony because the

19   VE gave erroneous job numbers when testifying that plaintiff had the RFC to perform the

20   representative job of mail clerk.  Plaintiff claims that the testimony regarding the number of

21   available jobs for this occupation was incorrect because the VE used the numbers cited in the

22   Standard Occupational Classification codes for "Mail Clerks and Mail Machine Operators,

23   Except Postal Service," which also includes jobs other than mail clerk that have different

24   functional requirements.  Plaintiff argues that this testimony conflicted with the Dictionary of

25   Occupational Titles ("DOT"), therefore requiring the ALJ to inquire into the conflict.  Plaintiff

26   admits that the ALJ admonished the VE to advise her of a conflict between the VE's testimony

27   and the DOT (AT 83), but argues that the VE failed to testify as to the conflict plaintiff

28   highlights.  Plaintiff argues that remand is necessary for further proceedings to resolve this

1   conflict.  However, even assuming, without determining, that this conflict amounted to error, it

2   was harmless error.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[W]e may not

3   reverse an ALJ's decision on account of an error that is harmless.").  The VE provided two other

4   representative occupations that plaintiff is able to perform given his RFC, namely hand packager

5   and janitor, that existed in significant numbers.  (AT 85-86.)  Because the ALJ properly relied on

6   the VE's testimony regarding these other two occupations to determine at step five that there were

7   jobs plaintiff could perform given his RFC that existed in significant numbers, the ALJ properly

8   established that plaintiff was not disabled for purposes of the Act.  See Lester 81 F.3d at 828 n.5.

9   Accordingly, plaintiff's argument is not well taken.

10  V.      CONCLUSION

11          Based on the foregoing, IT IS HEREBY RECOMMENDED that:

12          1.      Plaintiff's motion for summary judgment (ECF No. 19) be DENIED.

13          2.      The Commissioner's cross-motion for summary judgment (ECF No. 20) be

14  GRANTED.

15          3.      Judgement be entered for the Commissioner.

16          4.      The Clerk of Court be directed to close this case and vacate all dates.

17          These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served on all parties and filed with the court within fourteen (14) days after service of the

23  objections.  The parties are advised that failure to file objections within the specified time may

24  waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

25  Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

26          IT IS SO RECOMMENDED.

27  Dated:  July 31, 2015

28

16

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE